ELISHA T. HUTCHINSON, Appellant,

*vs.*

INHABITANTS OF CARTHAGE.

Franklin.     Opinion February 16, 1909.

*Paupers.    Overseers of the Poor.    Duties of Same.    Contagious Diseases.
Quarantine.    Board of Health.    Revised Statutes, chapter 18;
chapter 27, sections 2, 11.*

It is made the duty of the overseers of the poor of the town where a person may be found in distress to institute an inquiry, not as to any means he may possess, of which he cannot then avail himself, but whether immediate relief is necessary. Were it otherwise, the party might be left to suffer while the officers were deliberating as to the extent of their official duty and the nature of their remedy.

If the overseers of the poor act in good faith and with reasonable judgment touching the necessity of relief of persons found in need, their conclusions will be respected in law.

The doctrine that the overseers of the poor may make a contract for the relief and support of those found in need of relief in their town, is well established.

It is immaterial whether a person in need is brought into that condition by quarantine, neglect of the board of health or otherwise, inasmuch as it is the fact of the situation not the method of producing it, that requires the action of the officers of a town.

The plaintiff brought an action to recover $25 for services alleged to have been rendered by him for the defendant town through a contract with the overseers of the poor. The evidence showed that Samuel Kittridge, his wife and several children were taken ill with the measles, quarantined by order of the board of health and left in this helpless situation without nurse or attendant. So serious was the condition of the father and mother that they both died from the results of the disease. Under the stress of these circumstances, the attending physician called upon one of the selectmen and overseers of the poor who, when informed of the situation, with one of his associates made a personal investigation and then, with the approval of both of his associates, employed the plaintiff to take charge of the afflicted family. After the death of Mr. Kittridge, while he had no real estate, nor money in a bank, it was discovered that he had a small amount of personal property all in chattel form, estimated to be about $200, after payment of debts. The defendant town admitted that the services charged for were rendered for the Kittridge family and that the amount claimed was reasonable. The presiding Justice ordered a verdict for the plaintiff and the defendant town excepted.

*Held:* (1) That the verdict was rightly ordered upon the question of fact.

(2) That Revised Statutes, chapter 27, sections 2, 11, providing that "towns shall relieve persons having a settlement therein, when, on account of poverty, they need relief," is absolute in its terms and was not repealed expressly or by necessary implication by the act, R. S., chapter 18, creating the board of health.

(3) That R. S., chapter 27, section 2, only applies to cases where the settlement of the pauper is in question, and that that question did not arise in the case at bar.

On exceptions by defendants.    Overruled.

Action of assumpsit brought in the Municipal Court of Farmington, Franklin County, to recover the sum of $25 for services rendered by the plaintiff to the defendant town by virtue of an alleged contract with the overseers of the poor of the defendant town whereby the plaintiff took care of Samuel Kittridge and his family, residents of the defendant town, while sick with a contagious disease.   Plea, the general issue.   By appeal on the part of the plaintiff, the action was transferred to the Supreme Judicial Court in said county and was tried at the May term thereof, 1908.   At the conclusion of the testimony, the presiding Justice ordered a verdict for the plaintiff for the amount sued for and the defendant town excepted.

The case is stated in the opinion.

*Nathan G. Foster*, for plaintiff.

*Joseph C. Holman*, for defendants.

SITTING:   EMERY, C. J., SAVAGE, PEABODY, SPEAR, BIRD, JJ.

SPEAR, J.   This is an action of assumpsit for the recovery of $25 for services alleged to have been rendered by the plaintiff for the defendant town through a contract with the overseers of the poor. It appears from the evidence that Samuel Kittridge, his wife and several children were taken ill with the measles, quarantined by order of the board of health and left in this helpless situation without nurse or attendant.   So serious was the condition of the father and mother that they both died from the results of the disease.   Under the stress of these circumstances, the attending physician called upon one of the selectmen and overseers of the poor who, when informed of the situation, with one of his associates made a personal investigation and then, with the approval of both of his associates, induced the plaintiff, much against his inclination, to accept the employment of administering care to the afflicted family.   After the death of Mr. Kittridge, while he had no real estate, nor money in a bank, it was discovered that he had a small amount of personal property all in chattel form, estimated by the administrator to be about $200 after payment of debts.   The defendants admit that the services charged were rendered for the Kittridge family and that the amount claimed is reasonable.

Upon this state of facts, the defendants say that the order of the verdict for the plaintiff was erroneous, first, because there was sufficient evidence to raise the question of fact which should have been submitted to the jury whether the selectmen or overseers of the poor acted as agents of Mr. Kittridge or as agents of the town ; second, that it was the duty of the board of health to "furnish medical treatment and care for persons sick with such diseases who cannot otherwise be provided for ;" third, that the overseers of the poor were not authorized by any provision of the statute to contract for the services rendered.

Briefly re-stating the case, in order to get its logical bearing, it appears that Mr. Kittridge and his family became seriously ill with a contagious disease in the house occupied by him as a home ; that the house was quarantined by order of the board of health ; that

the board of health failed to provide any assistance and he and his family were left in distress and need; the overseers of the poor were notified of the condition of the family; investigated and ascertained the truth of the facts; and thereupon, in their capacity as overseers, as they say, employed the plaintiff to take care of the Kittridge family.  Under this chain of events, granting the most favorable inference which could be drawn from the testimony in favor of their first contention, that the agency of the overseers should be submitted as a question of fact, we are of the opinion that the defendants have failed.  While the question might be raised, yet the evidence is so overwhelmingly in favor of the plaintiff upon this point that a verdict of the jury to the contrary could not be permitted to stand.

The defendants' second contention that the statute authorizing the board of health to furnish medical treatment and care was intended to abrogate the statute authorizing overseers of the poor to aid persons found in distress, is clearly untenable.

The statute which says "Towns shall relieve persons having a settlement therein, when, on account of poverty, they need relief," is absolute in terms and was not repealed expressly or by necessary implication by the act creating the board of health.

It is immaterial whether the person in need is brought into that condition by quarantine, neglect of the board of health or otherwise, inasmuch as it is the fact of the situation not the method of producing it, that requires the action of the officers.

In this connection the defendants intimate that the fact that Mr. Kittridge left something like $200 in his estate should operate to defeat the adjudication of the overseers of the poor that he was in need of relief when they employed the plaintiff to take care of him.  But our court have several times held that it is the duty of the overseers of the poor to relieve a person found in their town in distress, although he may have property of his own not available for his immediate relief.  The court held this to be a true interpretation of the statute although the person found in need of relief was a non-resident and the action was between the town furnishing the supplies against the resident town of the pauper.  *Norridgewock*

v. *Solon*, 49 Maine, 385.   The reasoning in this case should apply with increased force to the case at bar inasmuch as the overseers were acting in behalf of their own town in furnishing the relief instead of for another town.   Yet upon this issue it was said: "But it is contended that he was not, in fact, a pauper; that he had means by which he could have paid for, or secured his own support.   All this may be true, and the overseers may still be liable, under the statue to furnish relief."

In a case involving this point, *Alna* v. *Plummer*, 4 Maine, 258, the court hold:   "It is made the duty of the overseers of the town where a person may be found in distress to institute an inquiry, not as to any means he may possess, of which he cannot then avail himself; but whether immediate relief is necessary.   Were it otherwise, the party might be left to suffer, while the officers were deliberating as to the extent of their official duty and the nature of their remedy."   All the cases hold that if the overseers act in good faith and with reasonable judgment touching the necessity of relief of persons found in need, their conclusions will be respected in law. It requires no evidence in this case to satisfy a reasonable mind that the overseers of the poor acted in good faith, with reasonable judgment and in accord with the demand of humanity.   Upon this point the decisions quoted were in construction of a statute practically the same as R. S., chap. 27, sec. 11, is today.

Upon the third point, the doctrine that the overseers of the poor may make a contract for the relief and support of those found in need of relief is too well established to require discussion.

In *Conley* v. *Woodville*, 97 Maine, 241, it is said:   "It is entirely true that a town may become liable to the inhabitants of another town for relief furnished a pauper by virtue of a contract between the town and a person furnishing relief."

In *Palmyra* v. *Nichols*, 91 Maine, 17, "Overseers of the poor have the care and oversight of the poor, and in the discharge of their duties, they are the authorized agents of the town.   Necessarily they may direct a variety of business, incidental to their general powers."   See also upon this point *Clinton* v. *Benton*, 49 Maine, 550; *Corinna* v. *Exeter*, 13 Maine, 321.

But the defendants contend that the care furnished came within the rule of "pauper supplies" and must be applied for or received "as pauper supplies" as required by R. S., chapter 27, sec. 2. But this question does not arise in this case. It becomes material only in suits between towns where it is sought to interrupt a five years' pauper settlement by evidence of the alleged pauper having received "supplies as a pauper." The requirement therefore of. section 2, chapter 27, R. S., only applies to cases where the settlement of the pauper is in question.

In this case there is no such question. The overseers of the poor adjudged that the Kittridge family needed services and that the town should furnish them. They then in behalf of the town employed the plaintiff to render the services so adjudged and needed and he rendered them. That is sufficient to sustain the action. The town having hired the plaintiff should pay him. He has no concern of the question whether Kittridge applied for or received his services as pauper supplies such as would interrupt the effect of the five years' settlement. The order of the verdict must be sustained.

*Exceptions overruled.*